UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| TATUM E. HALL, | ) | Civil File No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| MINNESOTA BOARD OF PHYSICAL THERAPY, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiff Tatum E. Hall ("Hall") brings this action under Section 1983, the Due Process Clauses of the Fourteenth Amendment and the Minnesota Constitution, and Title I, II and III of the Americans with Disabilities Amendments Act ("ADA") for compensatory and injunctive relief against defendant Minnesota Board of Physical Therapy ("Board") for refusing to grant testing accommodations required to enable Hall, a person with disabilities, to have equal access to the National Physical Therapy Examination ("Exam") administered by the Board.  In so refusing, the Board had no adequate process and procedure upon which the refusal was based or a fair process by which to appeal the denial.

Hall has a property interest in taking the Exam with full accommodations.  The Board's actions deprived Hall of that property interest without adequate due process or procedure.  The decisions by the Board whether to grant or deny accommodations to Hall were done by administrative fiat.

The Board further violated Hall's right under Title II of the ADA to receive equal opportunity to participate in and benefit from state and local governments' programs, services, and activities.

Each time Hall applies to take the Exam in Minnesota, she is required to also submit a request for modifications and accommodations to the Exam as an individual with a disability. The Board makes an internal eligibility determination for modifications and accommodations for the Exam that are inconsistent with the federal regulations. Each time Hall submitted all of the requisite materials to support her request, the Board granted her partial accommodations and modifications. Hall retained legal counsel to challenge the decision by the Board again requested modifications and accommodations using the same supporting documents. This time the request for modifications and accommodations was granted. To sit for each Exam, Hall is required to reapply and be the subject of the internal determination by the Board.

The Board denied Hall the timely and full accommodations inconsistent with the regulations and pursuant to Board process that fails to provide adequate due process to protect her property interested. As a result, Hall has been damaged and seeks monetary damages that Hall has sustained as a result of the Board's wrongful refusal, injunctive relief mandating adequate due process, and for the costs of suit including reasonable attorneys' fees and costs.

The Board denied Hall's Minnesota Government Data Practices requests for the policies and procedures surrounding the Board's decision-making pertaining to modifications and accommodations for the Exam and adequate due process to challenge the Board's decision.

2

JURISDICTION, PARTIES AND VENUE

1.      Plaintiff Hall is a citizen of Minnesota, residing at 15090 Canfield Street, Lake Park, Minnesota 56554.  She attended Central Lakes College and Minnesota State University Moorhead ("MSUM") the University of North Dakota' graduate program in Physical Therapy.

2.      Defendant Board is a non-profit corporation, organized and existing under the laws of Minnesota, with its principal place of business at 2829 University Avenue SE, Suite 420, Minneapolis, Minnesota 55414.

3.      Hall's claims against the Board arise under the ADA, 42 U.S.C. §§12101 *et seq.,* including 42 U.S.C. §12189, Section 1983, the Fourteenth Amendment Due Process Clause, the Minnesota State Constitution Article I, Section 2, and the Minnesota Government Data Practices Act.

4.      This Court has jurisdiction of this action under 28 U.S.C. §§1331, 1332 and 1343.

5.      Venue is proper because Hall and the Board are residents of this District.  28 U.S.C. §1391.

FACTS

**A.  Hall is a person with disabilities with language processing and attention span impairments which adversely affects her learning.**

6.      Hall had cranial/brain surgery on July 31, 2009 as a result of meningioma (tumor).  Prior to surgery, Hall had a history of seizures and it was a grand mal seizure that led to the tumor's identification.  As a result of the tumor and surgery, Hall sustained injuries to the left subcortical regions of her brain.  Hall's brain was further injured when she underwent gamma knife radiation on three separate occasions in June 2010, January 2013, and June 2015 to address the tumor and re-growth.

7.      Hall's injuries to her brain from the tumor, surgery and radiation substantially limit her in the major life activity of learning, specifically her impairments in language processing and attention span which affect her reading, concentrating, fatigue, and thinking. Her impairments

adversely affect her to ability to read and respond to complex passages within time limits, take computer-based exams, and her physical endurance to sustain her attention over time, as compared with similarly situated individuals who are not disabled.

8.      She is significantly impaired in her learning with respect to "processing language quickly." Because of her tumor and treatment, Hall's ability to read multiple choice questions, hold that information in mind, and retrieve that information quickly to perform on a timed test is impaired.

9.      Identification of Hall's disabling condition and recommendations for modifications and accommodations were first provided by Dr. Allan Ingentio with Minneapolis Clinic of Neurology on July 18, 2012.

10.     Hall was provided with Section 504 plans beginning in her 10th grade at Lake Park Audubon Schools in Lake Park, Minnesota through to her graduation.  Hall also received testing modifications and accommodations on her ACT.

11.     While attending college at Central Lakes College ("CLC") and Minnesota State University Moorhead ("MSUM"), Hall received modifications and accommodations of extended time and separate location for her exams.

12.     Hall applied to and was admitted into the graduate Physical Therapy program UND.

13.     In May 2018, Hall graduated from the UND.  Immediately after graduation, Hall's treating physician at Mayo began weaning Hall off the seizure medication (Lamictal) she had been on for the previous nine years.

14.     Hall intended, throughout her education, to practice physical therapy in Wisconsin and applied to the Federation to take the Exam for Wisconsin licensure.

15.     Each individual eligible to take the Exam is permitted six attempts to receive a passing score.

16.     Hall was concerned with her inability to pass the Exam, after three unaccommodated attempts, and consulted with her long-standing and treating psychologist, Brian Gatheridge, Ph.D. Dr. Gatheridge referred Hall to Rodney A. Swenson, PhD at Neuropsychology Associates, PA located in Fargo, North Dakota who completed the neuropsychological assessment. Dr. Swenson found Hall had impairments in language processing and attention span associated with the meningioma and its treatment.

17.     Based on the assessment, Dr. Swenson recommended the following testing accommodations: 1) paper format; 2) separate room; 3) extended time (1.5); and 4) two-day testing period with the elimination of additional 50 questions included for future exam construction by the Federation for proprietary interests rather than the examinee's knowledge and skill.

18.     The ADA requires entities that offer examinations "related to applications, licensing, certification, or credentialing for ... professional, or trade purposes" to "offer such examinations ... in a place and manner *accessible* to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189 (emphasis added). The purpose of this section is "to assure that persons with disabilities are not foreclosed from educational, professional, or trade opportunities because an examination or course is conducted in an inaccessible site or without an accommodation." H.R.Rep. No. 101–485(III), at 68–69 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 491–92. *Enyart v. National Conference of Bar Examiners, Inc.*, 630 F.3d 1153 (9th Cir. 2011).

## B. The National Physical Therapy Licensing Examination

19.     In order to practice and obtain licensure as a physical therapist, individuals are required to take the National Physical Therapy Examination ("Exam"), which is administered throughout the United States.

5

20.     The Exam is a computer-based, proctored, and timed test of five-hour exam to be taken in a single sitting.  It is comprised of 250 multiple choice questions broken into five sections.  Only 200 of the questions are graded, with the additional 50 questions, randomly asked throughout all five sections, are not counted for credit as these are questions sampled by the Federation for the proprietary purpose of future exams.

21.     Individuals taking the Exam for licensing purposes are limited to six attempts to pass the Exam.

MINNESOTA BOARD OF PHYSICAL THERAPY ("BOARD")

22.     The Board is the agency in Minnesota responsible for accepting requests for accommodations for individual's seeking to take the Exam for licensure in Minnesota.

23.     As described more specifically below, the Exam is required in order to become licensed as a physical therapist in the state of Minnesota.

24.     The Board is obligated to provide students with disabilities reasonable testing modifications and accommodations such that student's aptitude and achievement which the Exam purports to measure are tested rather than the impairments associated with Hall's disabling condition.

25.     Hall registered and paid for an Exam administered in Minnesota.  Hall requested testing modifications and accommodations, along with her supporting documents, from the Federation for the Exam in Minnesota.

26.     The Board responded by granting some, but not all, of Hall's testing modifications and accommodations.  The Minnesota Board offered no explanation for the denial of full modifications and accommodations. Hall attempted the Exam, partially accommodated, on October 24, 2019 and January 29, 2020 but failed the Exams.  In each case, Hall was required to pay fees for each Exam,

6

submit an application to take the Exam, and request modifications and accommodations.  As a result, Hall has lost two opportunities to take the Exam fully accommodated.

27.     On August 4, 2020, Minnesota Disability Law Center on Hall's behalf sent correspondence to the Federation advocating for modifications and accommodations for the Exam.

28.     The Federation responded on August 20, 2020 writing that the Board was solely responsible for granting or denying Hall's request for modifications and accommodations for the Exam in Minnesota.  However, during a March 13, 2020 meeting with the Executive Director of the Minnesota Board, Erin DeTomaso told Hall that the Federation was solely responsible for denying all of the requested modifications and accommodations.  And that the Minnesota Board could do nothing about the partial modifications and accommodations.

29.     On September 2, 2020, the Minnesota Disability Law Center, on Hall's behalf submitted the request for modifications and accommodations to the Board along with a copy of its correspondence to the Federation setting forth the clear errors upon which the Federations denials rested.

30.     The Board must provide the reasonable accommodations of additional time, separate space, paper copies and 2 days separate for the Exam to ensure it reflects Hall's aptitude and achievement, which the Exam purports to measure. are tested rather than the impairments associated with Hall's disabling conditions.

31.     The Board, through its administrative process, created additional and unlawful barriers to Hall by denying her the full testing modifications and accommodations.  The Board's eligibility determination process is without any appreciable standards or process. The Board's eligibility determination process is arbitrary and capricious as it does not comport with the federal regulations governing licensing agencies.  Further, the Board lacks an adequate process by which an appeal of

an eligibility determination can be made.  The Board's due process for appeals is equally arbitrary and capricious based entirely upon the Board's administrative fiat.

32.     After Hall had failed the two partially accommodated Exam, the Board agreed on September 19, 2020, for the first time, to provide Hall with all of the requested modifications and accommodations of extended time, separate location, written exam, and testing over 2 days.   The Minnesota Board refused to withdraw the two-partially accommodated Exams so that Hall would have three, fully accommodated attempts to take the Exam.  The significant delay in time between her graduation and the opportunity to take the a fully accommodated Exam has placed Hall in an untenable position in which she has, according to the Board, three remaining opportunities to pass the Exam but with a renewed request for accommodations that will be submitted through the same erroneous and unlawful internal administrative process.

33.     Hall is unable to practice as a physical therapist until she takes and passes the Exam.

   **C.  Hall has a history of disabilities and has previously received the same or similar accommodations in her university education.**

34.     Hall has a history of disabilities and has received the same or similar accommodations throughout her education.

35.     Identification of Hall's disabling condition and recommendations for modifications and accommodations were originally provided by Dr. Allan Ingentio with Minneapolis Clinic of Neurology on July 18, 2012.

36.     Hall was provided with Section 504 plans beginning in her 10th grade at Lake Park Audubon Schools in Lake Park, Minnesota through to her graduation.  Hall also received testing modifications and accommodations on her ACT.

37.     While attending college at Central Lakes College and Minnesota State University Moorhead ("MSUM"), Hall received letters of accommodations.

38.    Hall informed her Dean at the UND that she was disabled and may require modifications and accommodations.  However, she did not require a letter of accommodations to successfully complete the PT program and graduate.

39.    Hall is an individual with disabilities qualified to take the Exam.

**D. The Board refused reasonable testing accommodations in order for Hall to demonstrate her skill, knowledge and ability on the exam.**

40.    Hall did not request modifications and accommodations with the Federation for her first three Exam attempts.  Hall took the unaccommodated Exam in the state of Wisconsin in July and October 2018 and April 2019 but was unable to pass.

41.    Hall applied for her fourth attempt to take the Exam with the Federation on June 18, 2019. Hall's application included a request for modifications and accommodations consistent with Dr. Swenson's assessment and recommendations as well as her medical history from July 2009 to May 2019 which included her medical diagnosis, her surgeries, gamma knife radiation treatment, seizure disorder, and seizure medication changes.  Mr. Campbell told Hall that she did not need to provide any additional records.

42.    On July 11, 2019, Mr. Campbell, on behalf of the Federation denied the requested modifications and accommodations.  The Federation, through an administrative process in its Exam Services, created additional and unlawful barriers to Hall by denying the request based on, *inter alia*, inaccurate review of the documentation, misrepresentations of the information contained within the documentation, unlawful requests for documentation that exceeded the requirements for eligibility, and a fruitless appeal of decisions to the same individual who issued the denials in the first instance.

43.    Hall appealed the decision on July 30, 2019 but was again denied on August 13, 2019.  Hall submitted additional documentation that included a letter from her treating psychologist Brian

Gatheridge and Dr. Swenson's response to the Federation's denial.  In a conversation with Mr. Campbell, Hall was told she did not need to submit the ACT letter of accommodations or the 504 plans she received in high school.

44.     Hall appealed the Federation decision on August 13, 2019.  Hall appealed the decision on August 26, 2019 and submitted additional documents that included copies of her 504 plans, the ACT, CLC, and MSUM letters of accommodations, Dr. Ingenito's correspondence, and a copy of the United States Department of Justice ADA testing requirements.  The Federation denied the appeal on September 5, 2019.

45.     In speaking with a respected professor about her inability to receive accommodations in Wisconsin, the professor recommended that she sit for the Exam in Minnesota because she was more likely to be accommodated in Minnesota.  Hall also filed a complaint with the United States Department of Justice, Civil Rights Division ("DOJ").  DOJ on December 11, 2019 declined to intervene citing limited resources.

46.     The skills required to complete the Exam under standard timing and location conditions are the ability to sustain attention, read and comprehend complex questions, and maintain physical and mental endurance over the five hours required to take the Exam in one sitting.  The Exam is computer-based comprised of multiple-choice questions in five sections, one section of which is presented to applicants for the Federation's proprietary purposes.

47.     According to the Federation, the Minnesota Board of Physical Therapists is responsible for identifying and granting accommodations to those individuals taking the Exam for licensing in Minnesota.

48.     As a result of the Federation's direction to request modifications and accommodations with the Board, Hall submitted her first application to take the Exam in Minnesota and a request for

accommodations.  In support of her request, Hall submitted all of the documentation provided to the Federation through her request and appeals.

49.     Hall is required to submit an application for modifications and accommodations each time she takes the Exam with the Board.  With each new application to sir for the Exam, Hall may be denied the requested modifications and accommodations with no adequate process by which to challenge a decision by the Board.

50.     The Board has utilized standards, criteria, and methods of administration that have the effect of denying qualified individuals with disabilities reasonable accommodations resulting in the discrimination on the basis of disability. 28 C.F.R. 36.204.

**E.  How Hall is harmed by the Federation and Minnesota Board's refusal to provide the accommodations**.

51.     Hall has suffered and, unless the Board is enjoined and restrained from continuing to wrongfully deny the reasonable modifications and accommodations for her disabilities through an unlawful administrative process, Hall will continue to suffer immediate and irreparable harm, for which there is adequate remedy at law, in that:

   a.  Hall cannot obtain her licensure to practice as a physical therapist;
   b.  Hall has been denied modifications and accommodations by the Federation to take the Wisconsin Exam;
   c.  Hall was required to take two of her Exams in Minnesota with partial modifications and accommodations;
   d.  Hall has been delayed in receiving her licensure which due to the Federation's and Minnesota Board's denials of reasonable testing modifications and accommodations; and
   e.  Unless Hall is provided with reasonable modifications and accommodations, her Exam score will not reflect the aptitude and achievement which the Exam purports to measure rather than the limitations of her impairments associated with her disability and will adversely affect her ability to practice as a physical therapist; and
   f.  If Hall fails to pass the remaining Exams available to her and demonstrate her full ability and knowledge, she may be unable to become a licensed physical therapist.

52.     Upon graduating from UND's physical therapy program, Hall was offered a position by

the Osceola Medical Center in Osceola, Wisconsin at $34.50/hr. assuming Hall passed the Exam. After she failed the first of her three unaccommodated Exams in Wisconsin, her position was changed to a rehabilitation technician. She continued in this position until she failed to pass her second attempt to pass the Exam. She has been unable to obtain gainful employment on her field without passing the Exam.

53.     As a result of the damage Hall has suffered in the denial of modifications and accommodations from the Board is seeking relied under Section 1983, the due process clauses in the Fourteenth Amendment and Minnesota Constitution, and the Americans with Disabilities Act

54.     Hall submitted two (2) Minnesota Government Data Practices Act requests to the Board. The Board ignored the first request made on June 10, 2022. A second request was made on July 6, 2022. Hall submitted another request on July 11, 2022. The Board responded on July 26, 2022 with 52 pages. The data response was incomplete. The Board provided no correspondence between itself and outside agencies, including the Federation and Hall's counsel and no internal records reflecting any decision-making process pertaining to her request for modification and accommodations or an adequate procedure for the denial and deprivation of her property interest.

## CLAIMS

### COUNT I
### VIOLATION OF
### THE AMERICANS WITH DISABILITIES ACT

55.     Plaintiff incorporates the preceding paragraphs herein by reference.

56.     Hall is an individual with disabilities within the meaning of the ADA. 42 U.S.C. § 12102(2).

57.     Hall meets all the eligibility criteria to take the Exam.

58.     Hall is a qualified individual with a disability.

59.     Hall needs appropriate testing accommodations to participate in the Exam on a fair and equal basis.

60.     Title I, II and III of the ADA requires the Minnesota Board to offer examinations in a manner accessible to persons with disabilities. 42 U.S.C. §12189.

61.     Title III of the ADA states in pertinent part, "a failure to make reasonable modifications in policies, practices, and procedures when . . . necessary to provide such services . . . to individuals with disabilities" constitutes discrimination. 42 U.S.C. §12182(b)(2)(A)(ii).

62.     Title III of the ADA provides in pertinent part that: "[a]ny person that offers examinations ... related to applications, licensing, certification, or credentialing for ... professional, or trade purposes shall offer such examinations ... in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189.

63.     The Board has administrative systems and procedures that deny modifications and accommodations to qualified individuals with disabilities including the refusal to rely upon treating professionals' assessments and recommendations, and seeking documentation that exceeds that which is needed to make a determination about the requested modifications and accommodations.

64.     By wrongfully denying Hall's requests for extended testing time, written format, separate location and over a period of two days, the Board failed to "best ensure" that the examination results "accurately reflect [her] achievement level," has failed to give any weight to documentation of past accommodations, and has failed to respond in a timely manner to Hall's requests.

65.     By disregarding the reports of Hall's prior neuropsychological assessments, and particularly the recent assessment by Dr. Swenson, the Board disregarded written guidance from the Department of Justice which states that "[r]eports from experts who have personal familiarity

with the candidates should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." 28 C.F.R. pt. 36, app. A, at 796.

66.     The Board has discriminated, and continue to discriminate against Hall on the basis of her disabilities by denying her an equal opportunity to demonstrate her aptitude and achievement level on the Exam in violation of the ADA, specifically 42 U.S.C. §§12182, 12189 and 28 C.F.R. §36.309.

67.     The Board may continue violating Hall's rights to reasonable accommodation and modifications for the Exam.  The Board is further engaging in a continuing violation of Hall's rights to reasonable modifications and accommodations through administrative processes that interfere with the acquisition of reasonable modifications and accommodations thus inflicting damages upon Hall in excess of seventy-five thousand dollars ($75,000.00), or a sum the jury shall determine.

### COUNT II
### VIOLATION OF DUE PROCESS AND EQUAL PROTECTION
### FOURTEENTH AMENDMENT AND SECTION 1983

68.     Plaintiff incorporates the preceding paragraphs herein by reference.

69.     Hall has a property interest in sitting for and taking the Exam to obtain professional licensure as a physical therapist.

70     Hall has a liberty interest in pursing her livelihood and professional calling.

71.     Hall, as an individual with a disability qualified to sit for and take the Exam, had a legitimate claim of entitlement to sit for and take the Exam fully accommodated.

72.     Hall has a property interest in sitting for a fully accommodated Exam, Hall was denied accommodations by the Board without adequate due process resulting in the infringement of that property interest.

73.     Hall has a liberty interest in pursuing her livelihood and professional calling, Hall was subject to unlawful restrictions by the Board without adequate due process resulting in the infringement of that liberty interest.

74.     Hall is entitled to equal protection of the laws, including the right to be free from disability discrimination by state agencies and actors consistent with the ADA.

75.     The Board's eligibility determinations are arbitrary and capricious because the determinations are made without standards consistent with federal regulations and are in the sole discretion of the Board's Executive Director.  Further, there is no process by which an appeal can be made of an eligibility determination and any appeal and process of appeal is in the sole discretion of the Executive Director.

76.     As a matter of custom, policy, or practice, the Board leaves the determination for modifications and accommodations to the sole discretion of the Executive Director.  Further, as a matter of custom, policy, or practice, the Board and Executive Director do not apply the controlling regulations.

77.     The Board's grant of partial accommodations to Hall reflects the arbitrary and capricious determinations as there is no reason for granting some but not all of the requested accommodations and modifications.  The Board has proffered no explanation or basis for the grant of partial modifications and accommodations.

78.     The Board's continuing violation of Hall's right to due process inflicts damage upon her in excess of $75,000.00, or such sum as a jury shall determine.

## COUNT III
## VIOLATION OF DUE PROCESS
## MINNESOTA CONSTITUTION 6, ART. 1, §§ 2 AND 7

79.     Plaintiff incorporates the preceding paragraphs herein by reference.

80.     Hall has a property interest in sitting for and taking the Exam to obtain professional licensure as a physical therapist.

81.     Hall, as an individual with a disability qualified to sit for and take the Exam, had a legitimate claim of entitlement to sit for and take the Exam fully accommodated.

82.     As an individual with a property interest in sitting for a fully accommodated Exam, the denial of accommodations by the Board without adequate due process infringed and impaired that interest.

83.     The Board does not have an adequate process for which eligibility determinations are made regarding requested modifications and accommodations for the Exam.  The decision is left solely in the hands of the Board's Executive Director for which there is no appeal.  As a matter of custom, policy, or practice, the Board leaves the determination for modifications and accommodations to the sole discretion of the Executive Director.  Further, as a matter of custom, policy, or practice, the Board and Executive Director do not apply the controlling regulations.

84.     The Board's continuing violation of Hall's right to due process inflicts damage upon her in excess of $75,000.00, or such sum as a jury shall determine.

## COUNT IV
## VIOLATION OF
## MINNESOTA GOVERNMENT DATA PRACTICES ACT

85.     Plaintiff incorporates the preceding paragraphs herein by reference.

86.     The Board violated Hall's rights of access as a data subject and a data requester under the Minnesota Government Data Practices Act consistent with Minn. Stat. 13.04 subd. 3 by ignoring

16

two (2) data requests and, after a third request was made, refusal to provide all of the public data reflecting external and internal correspondence by the Board and any documents reflecting the decision pertaining to Hall's multiple requests for modifications and accommodations.

87. Minn. Stat. §§ 13.08 subd. 1, 13.08 subd. 2, and 13.08 subd. 4 provide remedies that include judgment, damages, exemplary damages, declaratory relief, injunctive relief to prohibit violations by the Board, and/or to impose evidentiary inferences at the Board's expense, mandamus relief to compel disclosure or data improperly withheld, and civil penalties up to $1,000.00, or such sum as a jury shall determine to hold the Board accountable for its failure to disclose data to which Hall has the right of access.

88. The Board's continuing violation of Hall's rights as a data subject and requester and an aggrieved party in which data is being willfully, intentionally, and with reckless disregard for Hall's right of access.

89. The Board's continuing violation of Hall's right to access inflicts damage upon her in excess of $75,000.00, or such sum as a jury shall determine.

90. The Board's intentional, willful, and reckless refusal to provide the data merits exemplary damages up to $15,000.00, or such sum as a jury shall determine.

91. The Board's intentional, willful, and reckless refusal to provide the data merits an award of fees and costs to prosecute the violations.

## RELIEF

WHEREFORE, Hall demands judgment against the Federation and Minnesota Board as follows:

1. Entry of judgment against the Board for the denial of reasonable modifications and accommodations for the Exam;
2. For preliminary and permanent injunctions enjoining and restraining the Board from refusing to grant Hall the reasonable modifications and accommodations for the Exam, in accordance with 42 U.S.C.A. § 12133; 28 C.F.R. 36.501(b);

3. For preliminary and permanent injunctions requiring that, for purposes of the Exam, the Board should evaluate Hall's request for testing modifications and accommodations based upon the assessments and recommendations of her treating physicians and

4. For a Declaratory Judgment that Hall has the right to receive testing accommodations from the Board for each of the Exams, in accordance with 42 U.S.C.A. § 12133;

5. For a Declaratory Judgment that the Board's administrative process is unlawful and inconsistent with the ADA;

6. For general damages against the Federation and Minnesota Board in excess of $75,000.00, including lost wages of $71,760.00 per annum for a period of three years, or a sum determined by the jury, in accordance with 42 U.S.C.A. § 12133;

7. For costs and disbursements of the suit in accordance with 42 U.S.C.A. § 12133;

8. For reasonable attorneys' fees in accordance with 42 U.S.C.A. § 12205;

9. Compensatory and exemplary damages, judgment and order to produce the data, and reasonable attorneys' fees and costs in accordance with Minn. Stat.  13.08; and

10. For such other relief the Court may deem just.


Respectfully submitted,

Date: March 20, 2023                    /s/ Margaret O'Sullivan Kane
                                        Margaret O'Sullivan Kane /ID # 220243
                                        Kane Education Law, LLC
                                        1041 Grand Avenue
                                        Suite 263
                                        Saint Paul, Minnesota 55105
                                        Tel. 651.222.8611
                                        Fax. 651.221.2623

                                        Attorney for Plaintiff


## VERIFICATION

I verify that I have read the foregoing Complaint, and that all of the facts and statements made therein are true and correct to the best of my knowledge, as to the attached documents they are true and correct copies, and as to those facts stated on information and belief, I also believe them to be true and correct.


Dated: _____          _____
                                        Tatum E. Hall

18

Subscribed and sworn to before me
this _____ day of March, 2023.


_____
Notary