UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Tatum E. Hall,  Case No. 23-cv-0665 (WMW/LIB)

    Plaintiff,

**ORDER**

v.

Minnesota Board of Physical Therapy,

    Defendant.

---

This matter is before the Court on Defendant Minnesota Board of Physical Therapy's motion to dismiss for lack of subject matter jurisdiction. (Dkt. 6.) For the reasons addressed below, the Court grants Defendant's motion and dismisses the action with prejudice.

## BACKGROUND

Plaintiff Tatum Hall ("Hall"), a resident of Lake Park, Minnesota, has a graduate degree in physical therapy from the University of North Dakota. Defendant Minnesota Board of Physical Therapy (the "Board") is an agency of the State of Minnesota and is responsible for responding to accommodation requests related to the physical therapy licensure examination.

Hall had brain surgery in 2009 to treat a tumor. The tumor and the surgery impaired many of Hall's learning-related skills. As a result, Hall experienced slower language processing, a shortened attention span, increased fatigue and diminished concentration and cognition. Hall received accommodations for exams during her undergraduate studies, but

not during her graduate program. After obtaining her master's degree in physical therapy, Hall took the licensure examination in Wisconsin three times without accommodations and did not pass. Applicants are limited to six attempts to pass the examination. Hall cannot practice physical therapy until she passes the licensure examination.

Hall then decided to take the licensure examination in Minnesota and to request testing accommodations from the Board. Hall consulted her doctor who recommended the following accommodations: hardcopy exam materials, an individual testing room, extended time, an additional day of testing and elimination of unscored experimental questions. The Board granted some of Hall's accommodations.[1] Hall took the examination twice "partially accommodated" and failed to pass. After the two failed attempts to pass the examination in Minnesota, the Minnesota Disability Law Center sent a letter to the Board on Hall's behalf requesting that Hall receive every accommodation. The Board approved all of Hall's requested accommodations and informed Hall that she had three remaining opportunities to pass the examination.[2] Hall has not taken the examination since receiving approval for all of the accommodations.

---

[1] The complaint does not explain which requested accommodations the Board granted, but the Board's filings suggest that the only accommodation that was not granted was Hall's request to take the examination over two days.

[2] The complaint maintains that the Board did not void any previous attempts, so it is unclear how the parties arrive at this number of remaining attempts. Nevertheless, Hall alleges—and the Board does not dispute in its filings—that the Board is providing Hall three more opportunities to take the examination.

Hall submitted two requests to the Board under the Minnesota Government Data Practices Act. The Board ultimately provided 52 pages of documents in response, but Hall alleges that the response was incomplete.

Hall alleges that the Board discriminated against her on the basis of her disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12182 and 12189, and that the Board might continue to discriminate against her because the Board lacks a lawful administrative process for granting accommodation requests. Hall also alleges that she has a property interest in sitting for the examination fully accommodated and that the Board's actions constitute a denial of due process under the Fourteenth Amendment to the United States Constitution and the due process provisions of the Minnesota Constitution, Art. 1 §§ 2 and 7. Finally, Hall alleges that the Board violated the Minnesota Government Data Practices Act, Minn. Stat. § 13.04, by withholding information from her request under that law.

## ANALYSIS

Hall's complaint comprises four claims: a violation of the Fourteenth Amendment to the United States Constitution; a violation of the Americans with Disabilities Act; a violation of the due process clauses of the Minnesota Constitution; and a violation of the Minnesota Government Data Practices Act. The Board moves to dismiss the complaint, arguing that the Court lacks subject matter jurisdiction over each of Hall's claims. Hall opposes the motion as to each claim.

A court must dismiss an action over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). A defendant may challenge a plaintiff's complaint for lack of subject-

matter jurisdiction either on its face or on the factual truthfulness of its averments. *See* Fed. R. Civ. P. 12(b)(1); *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial challenge, as presented here, the nonmoving party "receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Under Rule 12(b)(6), a complaint must allege sufficient facts that, when accepted as true, state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining whether the complaint states such a claim, a district court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).

Sovereign immunity is a threshold jurisdictional matter, properly addressed at any time. *Lors v. Dean*, 746 F.3d 857, 861 (8th Cir. 2014).

### A. Section 1983 Claims Under the Fourteenth Amendment

Hall's first claim is that the Board violated her rights under the Fourteenth Amendment to the United States Constitution, and she brings this claim through Section 1983. The Board argues that Minnesota has not waived its sovereign immunity to suit under Section 1983 and, therefore, this Court lacks jurisdiction over the case. In response, Hall contends that she has a protected interest in taking the examination with full accommodations because the examination is the conclusion of her course of study.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by Citizens of

4

another State . . . ." U.S. Const. amend. XI.  The Eleventh Amendment establishes a general prohibition against lawsuits in federal court by citizens of a state against their state or an officer or agency of that state.  *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011).  Such immunity extends to state-established boards.  *See Ashby v. Minn. Bd. on Judicial Standards*, No. 08-4691, 2008 WL 5236023, at *3 (D. Minn. Dec. 15, 2008) (concluding that complaint against Minnesota Board on Judicial Standards must be dismissed on immunity grounds).  But Eleventh Amendment sovereign immunity is not absolute.  *Doe v. Nebraska*, 345 F.3d 593, 597 (8th Cir. 2003).  Notwithstanding Eleventh Amendment sovereign immunity, a state may be subject to suit in federal court when (1) the state has unequivocally waived its sovereign immunity and consented to suit in federal court; or (2) Congress has unequivocally, through legislation, abrogated state immunity in order to effectuate the provisions of the Fourteenth Amendment.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  A state's waiver of its immunity must be clear and express.  *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974).

Here, the Board is an agency of the State of Minnesota and, therefore, is entitled to the protections of sovereign immunity.  Hall's claim can stand against the Board only if the state expressly waived the Board's immunity.  There is no indication that Minnesota has waived its sovereign immunity for Section 1983 claims.  In support of its position, the Board points to unpublished cases from the United States District Court for the District of Minnesota concluding that Minnesota has not waived immunity with respect to Section 1983.  Hall has not refuted this point.  The Board cites *Hussein v. Minnesota*, No. 19-cv-1913, 2019 WL 5693733, at *2 (D. Minn. Nov. 4, 2009).  The Court's research also

5

uncovered *Smith v. Fabian*, No. 10-cv-2193, 2012 WL 1004982, at *3 (D. Minn. Mar. 26, 2012) and *Stahl Const. Co. v. Minnesota*, No. 03-cv-3104, 2004 WL 742058, at *3 (D. Minn. Mar. 4, 2004). Each of these cases concludes that Minnesota has not waived its immunity. The parties do not cite, nor does the Court's research provide, a published opinion addressing whether Minnesota has waived immunity with respect to Section 1983 claims. In the absence of an express and clear waiver, this Court lacks jurisdiction over the Fourteenth Amendment claim. For this reason, the Court grants the Board's motion to dismiss with respect to Hall's Fourteenth Amendment claims.

### B.     Americans with Disabilities Act

Hall pleads claims under Titles I, II and III of the Americans with Disabilities Act ("ADA"). The Board moves to dismiss the ADA claims because, although the complaint adequately alleges a claim under Title II of the ADA, the claim is barred by the Board's immunity. The Board argues that the claims under Titles I and III are improper because those sections do not apply to an entity like the Board. Hall responds that Congress abrogated the State's immunity with respect to public education when it enacted the ADA. Hall also contends that denying accommodations for a licensure examination is akin to denying access to education.

*1. Whether Hall States Claims Under the ADA*

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. A "covered

entity" is defined as "an employer, employment agency, labor organization, or joint labor-management committee."  42 U.S.C. § 12111.  Here, the Board is not a covered entity and there is no employment relationship between the Board and Hall.  For this reason, the Court grants the motion to dismiss as to the Title I claim.

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182.  The statute defines "public accommodation" as a list of "private entities," including hotels, restaurants, retail stores, recreation facilities, education facilities and professional offices.  42 U.S.C. § 12181.  The Minnesota Board of Physical Therapy is an agency of the State of Minnesota and, therefore, is not governed by the "public accommodation" list.  For this reason, the Court grants the motion to dismiss as to the Title III claim.

Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  In pertinent part, "public entity" means "any department, agency . . . or other instrumentality of a State."  42 U.S.C. § 12131.  A "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the

7

participation in programs or activities provided by a public entity." *Id.* The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more" of an individual's "learning, reading, concentrating [or] thinking." 42 U.S.C. § 12102 (1)-(2). The Board is a public entity. And Hall has adequately alleged that she has a disability that limits her learning, reading, concentration and thinking. Hall also has alleged that she is qualified to sit for the licensure examination but is excluded from participation or otherwise discriminated against based on her disability. The parties agree and the Court concludes that, for the purposes of a motion to dismiss, Hall has adequately alleged a claim under Title II of the ADA.

*2. Whether Sovereign Immunity Bars Hall's Title II Claim*

As addressed in Section A, Congress can abrogate immunity through legislation. *See Pennhurst*, 465 U.S. at 99. Congress expressly abrogated sovereign immunity when it passed the ADA. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363-64 (2001); *see* 42 U.S.C. § 12202. Since Congress's power to abrogate immunity is not absolute, *see Doe v. Nebraska*, 345 F.3d at 597, a court must inquire "whether that abrogation is consistent with the scope" of Congress's power under Section 5 of the Fourteenth Amendment. *Klingler v. Dir., Dep't of Revenue, State of Mo.*, 455 F.3d 888, 893 (8th Cir. 2006). It is permissible for Congress to enforce constitutional rights, however, Congress cannot create constitutional rights. *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997).

The United States Court of Appeals for the Eighth Circuit adheres to the analytical framework outlined in *United States v. Georgia*, 546 U.S. 151 (2006), when considering

whether Congress had the authority to abrogate immunity in specific applications of Title II of the ADA. *Klingler*, 455 F.3d at 893. The *Georgia* analysis consists of three questions. First, does the alleged conduct violate Title II of the ADA? Second, does the alleged conduct violate the Fourteenth Amendment? Third, if the alleged conduct violates Title II but not the Fourteenth Amendment, is Congress's abrogation of immunity for the alleged conduct still valid? *See Georgia*, 546 U.S. at 159. If the alleged conduct violates Title II but not the Fourteenth Amendment, the Eighth Circuit applies an additional test to ascertain whether the abrogation of immunity is congruent and proportionate to the specific harm at issue. *Klingler*, 455 F.3d at 894.

The additional test has three parts, derived from *Boerne* and its progeny. *Id.* First, the Court must identify the "rights that Congress sought to enforce." *Id.* Second, the Court must decide whether Congress identified a history and pattern of unconstitutional conduct by the states. *Id.* Third, the Court must determine whether Congress's abrogation of immunity is proportionate to the constitutional violation. *Id.*

### i. The First *Georgia* Question

In this case, the analysis of Hall's Title II claim begins with the three steps of the *Georgia* analysis. The first question, whether Hall alleges a violation of Title II of the ADA, is not in dispute. As discussed above, the Board concedes that Hall has sufficiently pled this claim.

### ii. The Second *Georgia* Question

The second question is whether Hall alleges a violation of the Fourteenth Amendment. The complaint appears to state claims for procedural due process and

substantive due process violations.[3]  To state a claim for procedural due process violations, a plaintiff must identify a liberty or property interest under the Fourteenth Amendment and must show that the plaintiff was denied "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976).  If the plaintiff fails to allege a fundamental right, the Court's inquiry can end without assessing what amount of process was due. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Here, the Board identifies three cases from other jurisdictions, all of which concluded that a test-taker did not have a protected liberty or property interest in receiving accommodations for an examination.  *See Kohn v. State Bar of Calif.*, 497 F.Supp.3d 526, 536-37 (N.D. Cal. 2020); *T.W. v. N.Y. State Bd. of Law Examiners*, No. 16-cv-3029, 2022 WL 2819092, at *7 (E.D.N.Y. July 19, 2022); and *Bartlett v. N.Y. State Bd. of Law Examiners*, 970 F.Supp. 1094, 1142 (S.D.N.Y. 1997).  The Board also argues that licensure examinations are distinct from testing as part of education, but the Board only cites out-of-district cases for support.  Hall contends that the Court should instead apply Minnesota law, specifically the Minnesota Court of Appeals's holding that "[e]ducation is a fundamental right in Minnesota . . . as well as a property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *In re Expulsion of N.Y.B.*, 750 N.W.2d 318, 327 (Minn. Ct. App. 2008).

---

[3] The Board also analyzed a claim for equal protection.  Hall responded in her brief that she did not make a claim for equal protection.  This claim is not at issue in this case and the Court will not discuss it.

10

Hall's argument conflates rights related to access to education with a right to access professional licensure. The parties do not cite, nor has the Court identified, any Eighth Circuit case addressing whether professional licensure is a fundamental right in the context of the Fourteenth Amendment. Hall has rights to reasonable accommodations under the ADA. 28 C.F.R. § 36.309. If the Board, for example, were to refuse to administer the examination to Hall, that could constitute a denial of her right to sit for the examination. But that is not what has happened here. Hall requested accommodations for the examination, and the Board granted some of the accommodations. In fact, Hall sat twice for the examination in Minnesota with partial accommodations. Because the Board's decision to grant some, but not all, of Hall's requested accommodations does not implicate a protected interest under the Fourteenth Amendment, this aspect of Hall's argument is unavailing.

Hall alleges substantive due process as a second basis for protection under the Fourteenth Amendment. A claim for a violation of substantive due process must show a violation of "fundamental constitutional rights" and conduct that "was shocking to the contemporary conscience." *Flowers v. City of Minneapolis, Minn.*, 478 F.3d 869, 873 (8th Cir. 2007). A fundamental right is one that is deeply rooted in history and tradition. *Van Orden v. Stringer*, 937 F.3d 1162, 1167 (8th Cir. 2019). Although Hall argues that she has asserted a fundamental right based on the primacy of education within the Minnesota Constitution, this argument is unavailing. Any interest that Hall has in sitting for the examination fully accommodated is not an educational interest, but a professional licensure interest. Nothing advanced by the parties suggests that professional licensure is a right that

is deeply rooted in our history and tradition. Therefore, the Court concludes that a valid Fourteenth Amendment substantive due process claim is not at issue here.

### iii. The Third Georgia Question

Finally, the Court must determine whether the abrogation of immunity is still valid, even though there is no protected right under the Fourteenth Amendment.

### a. The First and Second Boerne Factors

The Eighth Circuit has conclusively answered the first two questions of the congruency and proportionality test. Congress passed Title II of the ADA to protect the right to be free from irrational discrimination based on disability, and Congress clearly identified "pervasive unequal treatment" in state programs as the problem the legislation addressed. *Klingler*, 455 F.3d at 896.

### b. The Third Boerne Factor

A court then considers the "specific rights implicated by the case before it" to assess the congruence and the proportionality of the application of Title II. *Id.* Here, the specific right at issue is the right to take a professional licensing examination with full accommodations. The parties do not identify Eighth Circuit caselaw that addresses the issue. In *Day v. Minnesota*, however, the District Court concluded that Title II abrogation was neither congruent nor proportionate to protecting the right of a physician to practice medicine without restrictions based on his mental disability because the right was not fundamental and the state's interest in regulating the profession was significant. No. 05-cv-2675, 2007 WL 4321999, at *22 (D. Minn. Dec. 6, 2007). Similarly, the District Court for the Eastern District of New York concluded that abrogation in the context of

accommodations for a bar examination was incongruent because "the bar examination is not open to the public; it is not a public service or program like the right to access court proceedings or voting; it does not affect an individual's 'ability to live within the structure of our civil [*sic*] institutions' like education." *T.W. v. N.Y. State Bd. of Law Examiners*, No. 16-cv-3029, 2022 WL 2819092, at *7 (E.D.N.Y. July 19, 2022) (quoting *Plyer v. Doe*, 457 U.S. 202, 223 (1982)).

When considering "whether Title II is congruent and proportional in the context of . . . disability discrimination in professional licensing," the Tenth Circuit concluded that Title II did not permissibly abrogate immunity with respect to accommodations in professional licensing. *Guttman v. Khalsa*, 669 F.3d 1101, 1120-21 (10th Cir. 2012). The Tenth Circuit reasoned that abrogating immunity "would require states to justify a significant range of rational, everyday licensing decision that would otherwise be constitutional," such that the nature of the right does not support abrogation. *Id.* at 1124.

This Court concludes that professional licensure is not a fundamental right. Abrogation of sovereign immunity in this context would be incongruent with the ADA. Likewise, abrogation would be disproportionate in this context because state licensing boards would be heavily burdened by liability under Title II. Indeed, if the ADA abrogated immunity in the context of professional licensure, every action taken by a licensing board would require statutory justification, adding complexity and costs to a system that is not equipped to respond to such demands. For these reasons, the Court concludes that abrogation is neither proportional nor congruent with the nature of the right to professional licensure.

In the specific context of professional licensure, abrogation in Title II of the ADA is not a valid use of Congress's power under Section 5 of the Fourteenth Amendment. The Court, therefore, grants the Board's motion to dismiss with respect to the ADA claims.

### C. Minnesota Constitutional Claims

Hall also alleges violations of due process by the Board under the Minnesota Constitution, because her interest in being licensed is a fundamental right that has been denied to her by the Board. The Board argues that sovereign immunity also bars these claims.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Under the Eleventh Amendment, "federal court[s] [lack] jurisdiction over state law claims against unconsenting states or state officials when the state is the real, substantial party in interest, regardless of the remedy sought." *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir. 2000) (citing *Pennhurst*, 465 U.S. at 120-21). "This constitutional bar applies with equal force to pendent state law claims." *Id.* (citation omitted).

A state "is deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 239-40 (1985). A state's waiver of immunity must be clear and unequivocal. *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991). Eleventh Amendment immunity is established

by a state's statement of its specific intent to subject itself to federal court jurisdiction. *Santee Sioux Tribe of Neb. v. Nebraska*, 121 F.3d 427, 431 (8th Cir.1997). A state's waiver of immunity in its own courts is not sufficient to waive immunity from suit in federal court. *Pennhurst*, 465 U.S. at 99, n.9.

Minnesota retains its immunity except when the immunity has been abrogated by the legislature or the Supreme Court. *Nichols v. Minnesota*, 858 N.W.2d 773, 775-76 (Minn. 2015) (noting that the Minnesota Supreme Court abrogated immunity with respect to tort claims and that the legislature had waived immunity with respect to some employment claims). Minnesota has not waived its immunity from suit in federal court for *all* claims. *DeGidio v. Perpich*, 612 F.Supp. 1383, 1388-89 (D. Minn. 1985) (concluding that the state waived immunity in state court with respect to some tort claims but did not waive any immunity at all in federal court).

Here, Hall does not cite any authority establishing that Minnesota has waived its immunity with respect to her due process claims. Absent an affirmative showing of the state's clear intent to waive immunity, this Court lacks subject matter jurisdiction to hear the claim. Therefore, the Court grants the motion and dismisses the state constitutional claims.

### D. Minnesota Government Data Practices Act

Hall alleges violations of the Minnesota Government Data Practices Act ("MGDPA"), Minn. Stat. § 13.01, et seq. The Board moves to dismiss this claim on the ground of immunity. Hall contends that Minnesota Statute Section 13.08, subdivision 1, expressly waives immunity from suit under the act.

15

As addressed in Section C., relevant to the MGDPA claim, "[t]he state is deemed to have waived any immunity to a cause of action brought under this chapter." Minn. Stat. § 13.08, subd. 1. The statute also addresses where venue is proper for a claim under the MGDPA, stating that "[a]n action filed pursuant to this section may be commenced in the county in which the individual alleging damage or seeking relief resides, or in the county wherein the political subdivision exists, or, in the case of the state, any county." Minn. Stat. § 13.08, subd. 3. Two cases in this District have analyzed immunity in federal court under this statute and concluded that the state did not waive immunity in federal court under the MGDPA. In *Evenstad v. Herberg*, 994 F.Supp.2d 995, 1005-06 (D. Minn. 2014), the court distinguished the MGDPA from other statutes that waive the state's immunity. Specifically, Minnesota Statute Section 1.05, subdivisions 1-5, waives state immunity for five federal statutes, and permits individuals to sue "the state in federal court or in any other court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of the act." In contrast, the MGDPA provides that "the state is deemed to have waived any immunity to a cause of action brought under this chapter." Minn. Stat. § 13.08, subd. 1. The *Evenstad* court concluded that the MGDPA's language "does not express a clear and unequivocal intent to waive Eleventh Amendment immunity specifically." 994 F.Supp.2d at 1006. Citing *Evenstad*, the district court in *Ernst v. Hinchliff*, 129 F.Supp.3d 695, 708 (D. Minn. 2015), dismissed a MGDPA claim against a state party for lack of subject matter jurisdiction, concluding that, the "Plaintiff is free to bring his MGDPA claim against [defendant] in state court, but not federal court." *Id.* (emphasis in original).

16

Here, the Court's analysis turns on whether the statutory waiver is sufficiently specific to waive the state's immunity in federal court. Relying on *Evanstad* and *Ernst*, the Board argues that it is not a clear waiver of federal court immunity. Hall argues that the statutory language of "any immunity" is sufficient to expose the state to suit in federal court. The Court concludes that the MGDPA does not waive the state's immunity in federal court. The Minnesota legislature was careful to use identical language in each of the five subdivisions of Minnesota Statute Section 1.05, waiving immunity specifically in federal court. The Minnesota legislature used different language in the MGDPA. And the MGDPA includes a separate subdivision that addresses the appropriate venue for MGDPA suits. The language of that subdivision clearly contemplates that lawsuits would be brought in state courts, not federal courts. *See* Minn. Stat. § 13.08, subd. 3 (providing that lawsuits may be brought in particular counties, which is an organizational structure of the state judiciary, not the federal judiciary). Because the state did not waive sovereign immunity with respect to suit in federal court, the Court grants the motion to dismiss.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.     Defendant Minnesota Board of Physical Therapy's motion to dismiss, (Dkt. 6), is **GRANTED**.

2.     Plaintiff Tatum E. Hall's complaint, (Dkt. 1), is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 27, 2023                s/ Wilhelmina M. Wright
                                                            Wilhelmina M. Wright
                                                            United States District Judge